# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2716 | **DATE** | 9/30/2002 |
| **CASE TITLE** | Charlotte Binzen vs. Jo Anne B. Barnhart, Commissioner of Social Security | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: The Court remands this matter to the Administrative Law Judge for further proceedings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

courtroom deputy's initials

Date/time received in central Clerk's Office

date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

Document Number

SEP 3 0 2002

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CHARLOTTE BINZEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 01 C 2716 |
| | ) |
| JO ANNE B. BARNHART, | )   Magistrate Judge Nan R. Nolan |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**DOCKETED**
SEP 3 0 2002

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Social Security Commissioner denying plaintiff Charlotte Binzen's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Administrative Law Judge held that Ms. Binzen was not disabled because she could perform either her past relevant work as a cashier and greeter or other cashier positions in the national economy that permit workers to alternate between sitting and standing. This matter is before the Court on the parties' cross-motions for summary judgment (docket entries #9 & #17), and the plaintiff's motion to remand pursuant to sentence six of § 405(g) (docket entry #11). The parties have consented to jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court REMANDS this matter to the Administrative Law Judge for further proceedings consistent with this opinion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Jo Anne B. Barnhart is automatically substituted as defendant in this case.

## Procedural History

The plaintiff has filed two DIB applications in the last five years. The first application—filed in January 1996—alleged that she became disabled in September 1994 due to a back injury. After her claim was denied initially and on reconsideration, the plaintiff requested that an Administrative Law Judge ("ALJ") review the denial of her claim. ALJ John L. Mondi conducted a hearing and concluded that Ms. Binzen was disabled from September 29, 1994, through November 25, 1996, but that she was not disabled thereafter because the medical evidence indicated that by November 1996 she had improved to the point where she could perform her past work as a cashier. (R. 49-54.) The plaintiff did not seek review of the ALJ's decision.

Ms. Binzen filed her second application for DIB in November 1997. (R. 72-74.) Her second application alleged that she became disabled on February 1, 1997 due to back and leg pain caused by herniated discs. The Social Security Administration ("SSA") denied her initial application and her request for reconsideration. (R. 58-66.) The plaintiff sought review of the SSA's decision by an ALJ. (R. 67.) On the request-for-review form, Ms. Binzen indicated that she did not wish to appear at a hearing before an ALJ. (*Id.*) She also signed a separate form waiving her right to appear in person before an ALJ. (R. 71.) Based on the documents submitted to him, ALJ Mondi—the same ALJ who ruled on the plaintiff's first application—found that Ms. Binzen was not disabled because the medical evidence established that she could perform a restricted but significant range of light work, including her past relevant work as a cashier and greeter. (R. 13-17.) After the ALJ issued his decision, Ms. Binzen asked the Appeals Council to review the ALJ's decision and submitted new evidence for the council's consideration. After stating that it had reviewed the new evidence, the Appeals Counsel denied the plaintiff's request for review.

## Background

Because the ALJ did not hold a hearing regarding the plaintiff's second application for benefits, the ALJ's decision was based on the documents submitted to him. Included in those documents was the transcript of Ms. Binzen's testimony from the May 1997 hearing on her first DIB application. (R. 18-42.)

### Ms. Binzen's Testimony From the May 1997 Hearing

On the date of the May 1997 hearing, Ms. Binzen was forty-two years old. (R. 24.) She had completed the ninth grade and subsequently obtained a GED. (R. 25.) The plaintiff testified that in the last decade she had worked at two jobs—machine operator from 1987 to 1990, and cashier at Sam's Club from 1990 to 1994. (R. 26-27.) According to Ms. Binzen, her cashier position required her to engage in "heavy lifting." (*Id.*)[2] She left the cashier job after she injured her back moving a case of liquor. (R. 27.) Ms. Binzen had back surgery in November 1994. (R. 30.)

The plaintiff also testified regarding how her back injury affects her daily life. She stated that the weather affects her back and that she has trouble driving. (R. 28-29.) She also testified that she cannot put any weight on her left leg, and sometimes she cannot put any weight on her right leg. (R. 28-29.) Ms. Binzen described her limitations as follows: she can stand for an hour to an hour and a half, sit for forty-five minutes to an hour, and lift objects weighing up to five pounds. (R. 29, 31.) She also stated that she has trouble stooping or bending. (R. 31.) Ms. Binzen testified that she can, with certain limitations, shop, tend to her five year old son, drive, cook and perform some household chores. (R. 33-34, 37.)

---

[2] On a disability form filed with the Social Security Administration, the plaintiff stated that her position at Sam's Club required her to lift up to fifty pounds. (R. 90.)

Medical Evidence

Dr. George DePhillips performed surgery on Ms. Binzen's back in November 1994. (R. 124.) Dr. DePhillips treated the plaintiff several times over the next two years. In November 1996, Ms. Binzen underwent a residual functional capacity ("RFC") evaluation. (R. 152-163.)[3] In a February 1997 letter, Dr. DePhillips released Ms. Binzen to return to work provided that her position conformed with the restrictions enumerated in the November 1996 RFC. (R. 129.) Although Dr. DePhillips opined that such a position would be a "light duty position," he stated that he would have to review the job's description prior to releasing the plaintiff to a specific position. (*Id.*)

In July 1997, the plaintiff returned to her former employer and worked part-time as a credit-card solicitor—a position that required her to sit at a desk for approximately four hours and receive credit-card applications from store patrons. (R. 108.) Shortly after she returned to work, Ms. Binzen visited Dr. DePhillips and complained that her pain had increased. (R. 127.) Dr. DePhillips prescribed pain medication. (*Id.*) In October 1997, Dr. DePhillips advised the plaintiff to stop working because "her pain ha[d] progressed and . . . at [that] point [he believed] that she need[ed] surgery." (R. 128.) In March 1998, Dr. DePhillips wrote a report summarizing his treatment of Ms. Binzen. (R. 123-25.) In that report, Dr. DePhillips stated that the plaintiff can lift or carry ten to

---

[3] Ms. Binzen did not submit the November 1996 RFC evaluation to the ALJ. The plaintiff attached the evaluation to her request for review that she submitted to the Appeals Council. The Seventh Circuit has held that "evidence submitted for the first time to the [Appeals] Council, though technically a part of the administrative record, cannot be considered in determining the correctness of the ALJ's decision. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). Accordingly, the Court will not consider the content of the November 1996 RFC evaluation in determining whether the ALJ's decision is supported by substantial evidence. However, the Court does discuss this evaluation in the context of Ms. Binzen's argument that the ALJ failed to develop a full and fair record. *Infra* at 17-19.

twenty pounds, that she should avoid prolonged standing or sitting, and that she should perform only minimal bending or stooping. (R. 124.)

At the request of the Disability Determination Service, two state agency physicians performed RFC assessments of the plaintiff in March and July 1998. (R. 114-121, 133-140.) Both physicians reached the same conclusions regarding the plaintiff's limitations; their reports state that Ms. Binzen can (1) lift twenty pounds occasionally and ten pounds frequently,[4] (2) stand and/or walk for about six hours in an eight-hour workday, (3) sit for about six hours in an eight-hour workday, and (4) push and/or pull without limitation. (R. 115, 134.) The two evaluations also note that the plaintiff can frequently balance and crouch, and can occasionally stoop, kneel, crawl and climb stairs, ramps and low ladders. (R. 116, 135.) Finally, the RFC reports state that Ms. Binzen cannot work at unprotected heights or climb ropes or scaffolds. (R. 116, 118, 135, 137.)

In November 1998, Dr. Mark K. Jundanian took an x-ray and performed a Magnetic Resonance Imaging ("MRI") scan of the plaintiff's lumbar spine. (R. 143-45.) Dr. Jundanian's x-ray report states that the plaintiff's spine appeared normal apart from a "thinning of the lamina of the L4 vertebrae on the right which probably represents a laminotomy." (R. 143.) In his MRI report, Dr. Jundanian states that he compared the November 1998 MRI scan to a MRI scan that was taken in November 1996, recorded the presence of what appears to be scar tissue at the L-4/L-5 level, and concluded that there did not appear to be any significant change between the two scans. (R. 144-45.)

---

[4] According to the RFC forms, "frequently" means a cumulative total of between one-third and two-thirds of an eight-hour workday, and "occasionally" means a cumulative total of between "very little" and one-third of an eight-hour workday. (R. 114, 133.)

The ALJ's Decision

The ALJ's decision tracked the familiar five-step analysis outlined in 20 C.F.R. § 404.1520. The ALJ found that the plaintiff's recent part-time work as a credit-card solicitor did not constitute "substantial gainful activity" (step one), Ms. Binzen has a "severe" orthopedic impairment which significantly limits her ability to perform basic work functions (step two), her impairment neither meets the requirements nor equals the level of severity contemplated for any impairment listed in Appendix 1 to subpart P, Regulations No. 4 (step three), and she is capable of performing either her past relevant work as a cashier and greeter (step four) or one of the many cashier positions in the national economy that permit an employee to alternate between sitting and standing (step five). (R. 14.) Accordingly, the ALJ held that Ms. Binzen is not disabled. (R. 16-17.)

In his written order, the ALJ referred to his previous decision regarding Ms. Binzen's first DIB application which concluded that by November 1996 the plaintiff had improved to the point where she could resume her past work as a cashier. (R. 14-15.) The ALJ determined that the medical evidence in the record did not rebut his earlier conclusion that Ms. Binzen's improved condition allowed her to perform a restricted but significant range of light work. (R. 15-16.) In his review of the medical evidence, the ALJ specifically noted (1) Dr. DePhillip's February 1997 report that concluded that the plaintiff could return to a light duty position, (2) Dr. DePhillip's March 1998 report that concluded that the plaintiff required flexible work activities with no prolonged standing or sitting, no lifting of more than ten to twenty pounds and only minimal bending and stooping, (3) Dr. Jundanian's MRI report that did not reveal any significant change from the previous MRI, and (4) the two RFC evaluations performed by the state agency physicians that concluded that the

plaintiff could perform light work with certain restrictions. (R. 15-16.) In reaching this conclusion, the ALJ discredited Ms. Binzen's testimony regarding her pain and functional limitations. (R. 16.)

## Standard of Review

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order:

1. Is the claimant presently unemployed?

2. Is the claimant's impairment severe?

3. Does the impairment meet or equal any of the specific impairments enumerated in the regulations?

4. Is the claimant unable to perform her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. § 416.920(a)-(f). An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps one through four. *Id.* Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show that the plaintiff can perform some other work that exists in significant numbers in the national economy. *Id.*

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Dixon v. Massanari*, 270 F.3d

1171, 1176 (7th Cir. 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation and citation omitted). Although this Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility, *Godbey v. Apfel*, 238 F.3d 803, 807 (7th Cir. 2000), the Court must ensure that the ALJ has built "a [logical] bridge from the evidence to his conclusion," *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

### Discussion

There are two primary problems with the ALJ's decision that preclude a determination that the ALJ's decision is supported by substantial evidence. First, the ALJ's conclusion that the plaintiff could return to her former position as a cashier and greeter at Sam's Club conflicts with evidence establishing that she could no longer perform that job. The ALJ reasoned that because Ms. Binzen was capable of "light work," she could return to her former position as a cashier and greeter. The evidence in the record, however, indicates that the plaintiff's former cashier position is more strenuous than "light work."

According to the relevant ruling by the Social Security Administration, "light work" involves (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects. Social Security Ruling 83-10; *Zurawski*, 245 F.3d at 886 n.6. The medical evidence in the record supports the ALJ's determination that the plaintiff has the lifting ability required for "light work", i.e., the evidence indicates that she is limited to lifting twenty pounds occasionally and ten pounds frequently. (R. 115, 134.) However,

Ms. Binzen testified that her former cashier job required her to engage in "heavy lifting." (R. 26-27.) She reported that she had to lift up to fifty pounds while working as a cashier at Sam's Club. (R. 90.) The fact that the plaintiff injured herself while attempting to move a case of liquor at the store also supports her testimony that her prior job required "heavy lifting." (R. 27.) The ALJ did not make any credibility determinations regarding these statements. Because the Court may not conclude that the ALJ discredited this evidence in the absence of an explicit finding, *Schroeter v. Sullivan*, 977 F.2d 391, 394-95 (7th Cir. 1992), the Court must assume that Ms. Binzen's prior cashier position required her to lift objects weighing up to fifty pounds. The ALJ's decision fails to explain how an individual who is limited to lifting twenty pounds has the ability to return to a job that requires her to lift up to fifty pounds. Accordingly, the Court concludes that the ALJ's determination that Ms. Binzen could return to her former cashier position is not supported by substantial evidence.

The Commissioner contends that even if this Court were to conclude that the ALJ erred in determining that the plaintiff could return to her prior position, a remand is not warranted because the ALJ also concluded that Ms. Binzen could perform other cashier positions in the national economy that would allow her to alternate between sitting and standing. The Court concludes, however, that this determination is also not supported by substantial evidence.

Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show that the plaintiff can perform some other work that exists in significant numbers in the national economy. *Zurawski*, 245 F.3d at 886. One way the Commissioner can satisfy this burden is to rely on the "grid"—a regulation establishing the types and numbers of jobs in the national economy that can be performed by individuals of certain enumerated abilities.

*Heckler v. Campbell*, 461 U.S. 458, 470 (1983). ALJ Mondi did not state that he relied on the grid. Moreover, the Court notes that reliance on the grid would have been improper in this case. The ALJ found that the plaintiff required a position that allowed her to alternate between sitting and standing. (R. 16.) Because Ms. Binzen cannot sit or stand indefinitely, she is not capable of performing most kinds of light or sedentary work. Social Security Ruling 83-12; *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996); *Jesurum v. Sec'y of the United States Dep't of Health & Human Servs.*, 48 F.3d 114, 120 (3d Cir. 1995). Reliance on the grid is improper if the claimant's residual functional capacity does not coincide with a defined range of work. *Zurawski*, 245 F.3d at 889; *DeFrancesco v. Bowen*, 867 F.2d 1040, 1045 (7th Cir. 1989). In such cases, the ALJ must consult "a vocational expert, vocational dictionary, or other appropriate guide or source . . . to determine whether there are sufficient jobs in the national economy that the applicant is physically capable of holding to justify a conclusion that [s]he is not disabled." *Peterson*, 96 F.3d at 1016; *see also Jesurum*, 48 F.3d at 120-21 (collecting cases). Without consulting any resource, the ALJ simply concluded that Ms. Binzen could perform one of the "many cashier positions in the economy [that allow the worker to alternate between standing and sitting] such as those found in service stations." (R. 16.) Because this determination is not supported by any evidence, the Court concludes that the matter must be remanded to the ALJ. *DeFrancesco*, 867 F.2d at 1045.

For the sake of completeness, the Court will also address Ms. Binzen's remaining arguments in support of her motion for summary judgment. The plaintiff contends that the Appeals Council erred when it (1) failed to consider new and material evidence relating to the period under consideration by the ALJ, and that the ALJ erred when he (2) proceeded without a hearing, (3) improperly discounted the plaintiff's credibility; and (4) misconstrued Dr. DePhillips's medical

-10-

reports. The plaintiff also moves this Court pursuant to sentence six of § 405(g) to remand the case to the ALJ for the consideration of new and material evidence.

1. Whether the Appeals Council Failed to Consider New and Material Evidence

The plaintiff argues that the Appeals Council erred as a matter of law by failing to consider new and material evidence that related to the period under consideration by the ALJ. The pertinent regulation states as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). Pursuant to the above language, the Appeals Council must determine (i) whether the proffered new evidence relates to the proper time period and (ii) whether the evidence is "new" and "material." *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). If the Appeals Council answers both of these questions in the affirmative it must then determine whether ALJ's decision is contrary to all of the evidence, i.e., the evidence before the ALJ and the new and material evidence submitted to the Appeals Council. If the Appeals Council denies review at this stage—essentially reasoning that all of the evidence does not undermine the ALJ's decision—then the council's decision is unreviewable. *Id.*

Ms. Binzen argues that the Appeals Council made a legal error when it determined that her new evidence was not material. The Court disagrees with the plaintiff's characterization of the Appeal Council's order. In its decision, the Appeals Council acknowledged that "where new and material evidence is submitted with the request for review, the entire record will be evaluated and

-11-

review will be granted where the Appeals Council finds that the [ALJ's decision] is contrary to the weight of the record." (R. 4.) The order further states that the Appeals Council "considered . . . the additional evidence [submitted by Ms. Binzen] . . . but concluded that . . . the additional evidence [did not] provide[] a basis for changing the [ALJ's] decision." (*Id.*) Implicit in the Appeals Council's decision to review the additional evidence is the council's determination that Ms. Binzen's proffered evidence was both "new" and "material." Contrary to the plaintiff's characterization, the Court concludes that the Appeals Council determined that the proffered evidence was both new and material. The council's subsequent determination that the additional evidence did not provide a basis to disturb the ALJ's decision is unreviewable. *Perkins*, 107 F.3d at 1294; *Lopez v. Massanari*, No. 01 C 1426, 2002 WL 531404, at *7-8 (N.D. Ill. Apr. 9, 2002); *Nitz v. Massanari*, No. 00 C 3850, 2001 WL 929759, at *10 (N.D. Ill. Aug. 15, 2001).

## 2. Whether Ms. Binzen Waived her Right to an Administrative Hearing

A claimant is entitled to personally appear before the ALJ before her claim for benefits is denied. *Stoner v. Sec'y of Health and Human Servs.*, 837 F.2d 759, 760-61 (6th Cir. 1988) (per curiam). However, a claimant may waive her right to appear. *Id.* at 761. In this case, Ms. Binzen waived her right to personally appear at a hearing before an ALJ when she signed a form entitled "Waiver of Your Right to Personal Appearance Before an Administrative Law Judge." (R. 71.) The plaintiff argues that her waiver was invalid because the waiver form did not contain the information required by Social Security Ruling 79-19. The Court disagrees.

To ensure that a waiver is made knowingly and voluntarily, the Commissioner has promulgated Social Security Ruling 79-19. That ruling states that a valid waiver form must show the following:

(1)    A thorough explanation of the hearing procedure has been given;

(2)    The right to personal appearance at the hearing to testify and present evidence has been explained;

(3)    An explanation has been given of the right of representation at the hearing by an attorney or other person of the individual's choice;

(4)    It has been explained that, in some cases, additional evidence obtained through oral testimony and personal presence before the presiding officer may be of value in evaluating the issues;

(5)    The individual has been advised that, if he or she does not appear, the claim will be decided solely on the written evidence then in file plus any additional evidence submitted by the individual or the representative or obtained by the hearing officer;

(6)    The individual has been advised that he or she may withdraw the waiver of the right to appear at the hearing at any time prior to mailing of the notice of the decision.

Social Security Ruling 79-19; *Stoner*, 837 F.2d at 761. The Court concludes that the form signed by the plaintiff contains all of the information required by Social Security Ruling 79-19. That document states (and by signing the waiver form Ms. Binzen acknowledged) that the plaintiff was informed (i) of her right to appear in person before an ALJ, (ii) that she has a right to a representative at the hearing; (iii) that her personal appearance would provide her with the opportunity to testify and to present the testimony of other witnesses as well as written evidence; (iv) that the opportunity to be seen and heard by the ALJ could be helpful to the ALJ when he makes his decision; (v) that her case will be decided on the written evidence; and (vi) that if she changes her mind and decides to request a personal appearance before the ALJ, she should make her request before the ALJ's decision is mailed. (R. 71.)

Ms. Binzen next argues that even if the waiver form complied with Social Security Ruling 79-19, her waiver was still invalid because additional circumstances suggest that she did not knowingly and voluntarily waive her right to a hearing. For example, in *Stiver v. Shalala*, 879 F. Supp. 1021, 1024 (D. Neb.1995), the district court held that the plaintiff's waiver was invalid because he had been incorrectly informed that he would have to travel 200 miles to attend the hearing. In this case, Ms. Binzen stated on the waiver form that she was waiving her right to a hearing because she did not know what time the hearing would be held or the date of the hearing. (R. 71.) She explained that "because [her] abilities fluctuate based on [the] weather," she could not be sure that she could drive herself to the hearing. (*Id.*) She also stated that she could not arrange for a friend or relative to drive her to the hearing without knowing when the hearing would be held. (*Id.*) Ms. Binzen argues that these statements indicate that she was confused by the scheduling of the hearing and preoccupied with making travel arrangements and, thus, her waiver was not made knowingly and voluntarily.

Even if the Court were to assume that these comments indicate some initial confusion on the plaintiff's part, the Court would conclude that a follow-up letter from the SSA cleared up any confusion. Ten days after receiving the plaintiff's signed waiver, the SSA sent the plaintiff a letter explaining that a notice of hearing would be mailed to her at least twenty days prior to the date of a hearing and that the notice would contain the time and location of the hearing. (R. 68.) The letter explains more fully the hearing process, her right to be represented at the hearing and how she can submit additional evidence regarding her claim. (R. 68-69.) Also, the SSA attached to the letter a document explaining that, in certain circumstances, the government will pay a claimant's travel expenses (including taxicab costs) related to the hearing and that if she had any questions she should

-14-

contact the hearing office. (R. 70.) The Court concludes that the letter and the waiver form informed Ms. Binzen that she could change her decision and request a hearing prior to the ALJ's decision (which was not issued for another five months) and that if she decided to attend the hearing, the SSA would mail to her a notice containing the time and location of the hearing at least twenty days prior to the hearing. In addition to clarifying the scheduling procedure, the subsequent letter from the SSA informed the plaintiff of the possibility of government reimbursement of travel expenses. Accordingly, the Court concludes that the additional circumstances identified by the plaintiff do not establish that she did not knowingly and voluntarily waive her right to appear at the hearing.

### 3. Whether the ALJ Improperly Discounted Ms. Binzen's Testimony

The plaintiff argues that the ALJ improperly discredited her testimony regarding her pain and functional limitations. An ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p. The Court concludes that the ALJ did not sufficiently explain his evaluation of Ms. Binzen's credibility.

To meet the requirements of Social Security Ruling 96-7p, an ALJ must do more than simply recite the factors described in the regulations for evaluating symptoms. For example, in *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001), the ALJ stated without elaboration that the claimant's testimony was "not entirely credible due to the inconsistencies with the objective medical evidence and inconsistencies with daily activities." The Seventh Circuit remanded the matter, reasoning that this explanation was insufficient to permit a review of the ALJ's credibility determination. *Id.* at

887-888. Similarly, in *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002), the ALJ's explanation of why he discredited the claimant's testimony consisted of the following sentence: "[t]he claimant's subjective complaints and alleged limitations were considered under the criteria of Social Security Ruling 96-7p and found credible only to the extent of precluding the claimant from performing work in excess of light level." The Seventh Circuit remanded the matter, reasoning that "the ALJ's evaluation of Steele's credibility does no more than cite ruling 96-7p without supplying any of the details demanded by that provision." *Id.* The Court concludes that the ALJ's explanation of why he discredited Ms. Binzen's testimony is similarly flawed.

In this case, the ALJ discounted Ms. Binzen's testimony in the following sentence: "[t]he claimant's representations as to pain and functional limitations are not entirely credible when evaluated using factors in Social Security Ruling 96-7p, especially her activities, work-related and otherwise." (R. 16.) The Commissioner argues that the Court should sustain the ALJ's credibility determinations because there exists sufficient evidence in the record from which the ALJ could have supported his decision to discredit the plaintiff's testimony. This argument is beside the point. The question is not whether the ALJ's credibility determination was correct; rather, the issue is whether the ALJ explained his credibility determinations in a manner that permits this Court to conduct an informed review those determinations. *Zurawski*, 245 F.3d at 888; *see also Conner v. Massanari*, No. 01 C 8251, 2002 WL 2003213, at *6 (N.D. Ill. Aug. 29, 2002) (holding that ALJ's single-sentence explanation for rejecting claimant's testimony—i.e., "that her symptoms far exceed her medical problems"—was insufficient). The Court concludes that the ALJ's one-sentence explanation of why he discredited Ms. Binzen's testimony regarding her pain and functional

limitations is insufficient. On remand, the ALJ's explanation for his credibility determinations must comply with Social Security Ruling 96-7p.

### 4. Whether the ALJ Misconstrued Dr. DePhillips's Medical Reports

The ALJ found that (i) the objective medical evidence indicated that the plaintiff could perform light work, (ii) the plaintiff's doctors agreed that she could perform light work with some restrictions, and (iii) Dr. DePhillips opined that Ms. Binzen was limited to positions that permitted her to alternate between sitting and standing. The plaintiff contends that these conclusions misconstrue Dr. DePhillips's medical reports. As noted previously, a person who cannot sit or stand indefinitely cannot perform most kinds of light or sedentary work. *Supra* at 10 (citing Social Security Ruling 83-12; *Peterson*, 96 F.3d at 1016). The ALJ failed to explain the inconsistency between his finding that the plaintiff could perform light work and his finding that she needed a position that permitted her to alternate between sitting and standing. *Peterson*, 96 F.3d at 1016 (remanding case because ALJ's finding that claimant is not capable of prolonged sitting, standing or walking conflicted with ALJ's finding that claimant capable of sedentary or light work). Accordingly, the Court concludes that the ALJ misconstrued Dr. DePhillips's medical reports when the ALJ stated that "[t]he [plaintiff's] doctors agree that she is able to perform light work with some restrictions." (R. 16.)

Ms. Binzen also argues that the ALJ erred when he failed to obtain a copy of the November 1996 RFC evaluation relied on by Dr. DePhillips. According to the plaintiff, that RFC evaluation is critical to understanding Dr. DePhillips's opinion that the plaintiff was able to perform "light duty" work. The Secretary did not address this argument.

It is clearly established that the ALJ has a duty to develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). "Moreover, when the claimant is unrepresented by counsel, the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) (internal quotation and citation omitted). This heightened duty applies regardless of whether the plaintiff's wavier of counsel was valid. *Id.* However, "a significant omission is usually required before [the Seventh Circuit] will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994).

The Court concludes that the ALJ's failure to obtain a copy of the November 1996 RFC evaluation was a significant omission because that document is necessary to understand Dr. DePhillips's opinion that the plaintiff could return to a "light duty position." The ALJ's decision relies heavily on his conclusion that "[t]he [plaintiff's] doctors agree that she is able to perform light work with some restrictions." (R. 16.) This conclusion is based on the ALJ's observation that "George DePhillips, M.D., reported that based on the functional capacity evaluation in November 1996, the claimant could return to a light duty position." (R. 15.) Although the ALJ's observation contains only a slight alteration of Dr. DePhillips's February 1997 letter, the Court concludes that the alteration is significant. In his February 1997 letter, Dr. DePhillips released the plaintiff to return "to a position that conforms with the restrictions outlined by the [November 1996 RFC] evaluation." (R. 129.) Although Dr. DePhillips opined that such a position would be a "light duty position," he stated that he would need to review a job description before he could release her to work at a specific position. (*Id.*)

The November 1996 RFC evaluation raises the possibility that Dr. DePhillips's understanding of a "light duty position" may not coincide with the ALJ's understanding of the term "light work." For example, the evaluation states that the plaintiff's demonstrated work tolerance was below the "sedentary physical demand level" and, therefore, she does not have the ability to perform her previous cashier position—a job the evaluation characterizes as a "medium physical demand level" position. (R. 163.) The evaluation also concludes that although the plaintiff could carry objects weighing up to twenty pounds, she could lift no more than thirteen pounds. (R. 158-59.) As noted above, Dr. DePhillips's opinion that Ms. Binzen could return to a "light duty position" specifically incorporated the findings of the November 1996 RFC evaluation. Therefore, the Court concludes that the ALJ should have examined the evaluation before it concluded that Dr. DePhillips opined that the plaintiff could perform "light work with some restrictions." Accordingly, on remand, the ALJ must consider the November 1996 RFC evaluation and the impact of that document on the other evidence in the record.[5]

## 5. Whether the ALJ Must Consider New and Material Evidence on Remand

Though the above arguments form the basis of the Court's decision to remand, the Court will also address Ms. Binzen's final argument that additional evidence should be considered on remand. The plaintiff contends that the ALJ should be required to consider the following documents from Dr. DePhillips: (i) a June 1999 "Disability Certificate"; (ii) four treatment notes dated August and November 1998 and March and June 1999; and (iii) a May 1999 letter. To prevail on this issue, the

---

[5] The Court notes that the evaluation also contains evidence that bears on Ms. Binzen's credibility. For example, the evaluation concludes that the plaintiff exhibited a maximum test effort and did not magnify her symptoms. (R. 162.) The evaluation also states that the plaintiff reported that her cashier position at Sam's Club required her to lift fifty pounds, (R. 155), the same amount she stated on a disability report more than a year later, (R. 90).

plaintiff must show that the evidence is new, that it is material, and that there is good cause for her failure to submit the evidence during the proceedings before the ALJ. *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993).

The Court concludes that the plaintiff has not establish that this evidence meets the appropriate standards of newness, materiality and good cause. The ALJ issued his decision on February 19, 1999. (R. 17.) Therefore, the Court concludes that the two treatment notes from 1998 are not "new" evidence. *Sample*, 999 F.2d at 1144 (holding that information that was available prior to the ALJ's decision is not "new" evidence). Regarding the remaining evidence, the Court concludes that the plaintiff has not established that the evidence is material. Evidence is material for sentence six purposes if "there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins*, 107 F.3d at 1296. Medical reports that postdate the ALJ's decision are not material if they speak only to the claimant's current condition and do not relate back to the period that was at issue before the ALJ. *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990). The remaining documents do not relate to the period that was at issue before the ALJ. The "Disability Certificate" conveys Dr. DePhillips's opinion that the plaintiff was "totally incapacitated" in June 1999—sixteen months after the ALJ's decision. Similarly, the treatment notes from March and June 1999 relate to Ms. Binzen's condition several months after the ALJ's decision. Finally, although Dr. DePhillips's May 1999 letter briefly refers to the period at issue before the ALJ (i.e., the one-paragraph letter contains one sentence that refers to the plaintiff's back surgery and her subsequent complaints of pain), the Court concludes that there is not a reasonable probability that this document would have altered the Commissioner's decision.

The medical evidence that was before the ALJ documented the plaintiff's back surgery and her subsequent complaints of pain. Dr. DePhillips's May 1999 letter sheds no new light on these topics.[6]

Because the plaintiff has failed to establish that this evidence is both new and material, the Court concludes that the ALJ does not need to consider this evidence on remand.

## CONCLUSION

For the reasons stated above, the Court REMANDS this matter to the ALJ for further proceedings consistent with this opinion.

**E N T E R:**

Nan R. Nolan

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: Sept 30, 2002

---

[6] The entire body of the letter states as follows: "Mrs. Charlotte Binzen has been a patient of mine over the past several years. She underwent a lumbar diskectomy, but has continued to suffer pain in both her lower back and leg. Unfortunately, although she needs a spinal fusion for stabilization and pain relief, her Workman's Compensation claim is currently in litigation and the patient has been denied the surgery. Until she does have the spinal fusion, she will most likely remain disabled to perform any meaningful employment." (Pl.'s Mot. to Remand, Ex. 3.)